Irwin v. Granite State Provident Association.

HENRY E. IRWIN

*v.*

THE GRANITE STATE PROVIDENT ASSOCIATION.

[Filed November 5th, 1897.]

1. Whether, after a foreign corporation doing business in this state has passed into the hands of a receiver in the state of its domicile, a receiver will be appointed in this state, and if so, whether the domiciliary receiver will be appointed here, will depend upon the volume and kind of business done in this state, and whether any special interest of the creditors or citizens in this state is likely to be involved in the settlement of the insolvent affairs.

2. The receiver in this state is amenable alone to the direction of this court and not to the direction of the domiciliary receiver.

3. The securities deposited by a foreign building and loan association with the secretary of state as a condition upon which it is permitted to do business in this state, will be controlled by this court so as to secure the payment of the amounts awarded to shareholders in this state upon final distribution of the assets of such insolvent corporation.

The Granite State Provident Association is a corporation chartered under the laws of New Hampshire, with power, *inter alia*, to carry on the business of a building and loan association; which consisted in selling shares of stock, upon which the purchaser agreed to pay $1 a month until the value of the shares reached the sum of $200; also in loaning the money so collected to shareholders, upon which loans interest and premiums were to be paid by the borrower. These loans or advancements, the amount to which, to any one shareholder, was limited to the matured value of all the shares he held and deposited with the company as collateral security, were to be paid and canceled whenever his shares of stock matured, *i. e.*, reached the value of $200 each, so that the sum total equaled the amount advanced. The loans or advances were also to be secured by real estate mortgages given by the borrower to the association, which mortgages were of course to be canceled at the maturity of the stock. The scheme was substantially that of all building and loan associations.

The association sold its shares and made loans not only in New Hampshire, but in several other states, including New Jersey. Among those who, in this state, bought shares and procured loans was the complainant, Irwin. He bought seven shares and borrowed $1,400, and deposited his shares as collateral security and gave to the association two real estate mortgages, one for $200 and the other for $1,200. On these shares he paid certain dues and interest.

Afterwards, on March 18th, 1896, the company became insolvent. The bank commissioners of New Hampshire caused it to be enjoined from transacting further business, and David A. Taggert was appointed assignee.

On March 25th, 1896, Irwin, the present complainant, filed his bill in this court, setting up the fact of the company's insolvency and the appointment of an assignee in New Hampshire, and further setting up that he, the complainant, was a stockholder and creditor of the company.

Upon this bill George R. Gray was appointed receiver in this state. In this suit the association was made a party defendant.

On December 21st, 1896, Mr. Taggert, upon his petition, was made a party defendant with leave to file an answer and cross-bill, which he did on March 27th, 1897.

The answer and cross-bill set up the right of the New Hampshire assignee to all the assets in New Jersey, and that the duty of the New Jersey receiver is only to preserve and deliver those assets to the former officer; that Mr. Taggert, the assignee, should be substituted for Mr. Gray as receiver; that Mr. Gray should be instructed to collect and pay over the proceeds of collection to Mr. Taggert, and that Mr. Gray should be ordered to conform to the directions given by Mr. Taggert and approved by the court in New Hampshire. The defendant also asks that it may be decreed that mortgagees are not creditors of the association.

*Mr. Cortlandt Parker*, for Taggert, assignee.

*Mr. Howard W. Hayes*, for Gray, receiver.

REED, V. C.

Assuming that Mr. Taggert, at this stage of the suit, is in a position to question the appointment of the New Jersey receiver, I am of the opinion that there is no substance in the objections raised. The insistence made on this behalf is, that all right in the assets of the insolvent corporation passed to him by force of his appointment as assignee in the State of New Hampshire. This proposition undoubtedly states the general rule. The right to collect personal assets everywhere passed to the receiver, but the exercise of that right beyond the limits of the state of his appointment is by virtue of the comity which may be extended to him by the court of the state in which the right is asserted. This comity will not be extended where the rights of the citizens of the state are likely to be prejudiced or where it would be in contravention of the policy of the state. *Hurd* v. *Elizabeth, 12 Vr. 1; National Trust Co.* v. *Miller, 6 Stew. Eq. 155; Sobernheimer* v. *Wheeler, 18 Stew. Eq. 614.*

In view of this admitted rule it follows, I think, that whenever application is here made for an appointment of a receiver for a foreign corporation which is already in the hands of a receiver at the place of its domicile, the court in which the application is made can do one of three things—first, it can refuse to appoint a receiver here and let the domiciliary receiver bring suit in this state to collect all the debts of the insolvent corporation within its limits; second, it can appoint the domiciliary receiver as ancillary receiver; third, it can appoint someone other than the domiciliary receiver.

In this instance the latter course was adopted. The receivership in this state is, however, but ancillary to the receivership in New Hampshire and constitutes a mere agency to collect assets here and forward them to the original receiver, unless it appears that creditors or stockholders in this state are asserting a special right in the local assets, which right should be settled by the courts here. Whether a receiver at all should be appointed in this state depends upon the volume of business and the kind of business which the foreign corporation was here transacting, and whether, if a receiver is appointed here, the appointee should be

Mr. Taggert or another depends upon several considerations, the main one being whether the interest of New Jersey parties would be likely to antagonize in any respect the interest of the general shareholders and creditors.

One prayer only in the cross-bill need be referred to to justify the appointment not only of a receiver in this state, but a receiver other than the domiciliary officer. This prayer is that the New Jersey receiver be directed to pay over the proceeds of the money collected by him to the New Hampshire assignee, to be distributed by him according to the laws of New Hampshire.

Now, a part of the money to be collected is the sum of $30,000 deposited by the association with the secretary of state for the benefit of the creditors in this state.

This condition of affairs, therefore, raised a question of importance, namely, whether this part of the assets at least should not be retained in this state to answer the purpose for which it was deposited.

The existence of this question, however it may be decided, is sufficient to show the propriety of a separate receiver in this state.

The remaining part of the cross-bill seems to be foreign to the subject-matter of the suit. The bill is filed to have a receiver appointed to administer the New Jersey business of the insolvent corporation. So far as the answer and the cross-bill are directed to matters pertaining to the right to have such an appointment made, they are entirely proper; but the other matters contained in the pleadings, which are designed to obtain the order of this court in respect to the conduct of the New Jersey receiver, are not germane to the purpose sought to be accomplished by the bill. Mr. Taggert undoubtedly, as the representative of the general body of stockholders, has a right to the aid of this court in compelling the receiver here to promptly and properly perform his duty.

But this object can be accomplished by a petition presented to the court. However, the receiver here, for the purpose of a speedy deliverance of this court upon the question presented by the cross-bill, is willing to regard the bill as a petition, and has,

therefore, fully answered it.   I will, therefore, proceed to consider the points involved.

One of the prayers of the cross-bill is that the New Jersey receiver shall be directed to sue in the name of the New Hampshire assignee.   It is apparent that the granting of this prayer would establish a condition entirely novel in the administration of affairs by an ancillary receiver.   The fact that a receiver has been appointed in this jurisdiction is the best evidence that, in the judgment of the court, the presence of a local officer is expedient to gather in the assets here, so that those assets will be under the control of the court, whose officer this receiver is.   A suit in the name of the foreign receiver would be exactly the same as a suit by that receiver himself.   The receiver here would be no more than the attorney in fact of that officer, not even subject to the direction of this court, either in the collection or the distribution of the money collected.   Mr. Gray would be merely a receiver in name.

The same condition of affairs would result if another prayer of the cross-bill should be granted, namely, that the New Jersey receiver should be ordered to conform to the directions of the assignee regarding the collection or compromise of claims.   Such an order would make the New Jersey receiver the instrument for executing the will of the New Hampshire assignee, rather than an officer of this court, amenable to its directions and liable to it for the manner in which he should discharge his duties.   Mr. Gray is an officer of this court, and if any person interested in the administration of the corporate affairs confided to him thinks that he, through delay or mismanagement, or otherwise, is jeopardizing any such interest, he can, by application to this court, have the matter rectified if there appears to be a grievance.

As already observed, Mr. Taggert, as the representative of all the creditors, can thus, through this court, secure a prompt and equitable administration of the affairs of the insolvent association within this state.

The important question discussed upon the hearing is raised by another prayer and the facts upon which it is based, namely,

Irwin v. Granite State Provident Association.

that Mr. Gray be directed to collect all debts and pay over all proceeds to Mr. Taggert, to be distributed according to the laws of New Hampshire.

That, as a rule, the prayer states correctly the duty of the ancillary receiver is not controverted by the counsel of the New Jersey officer. It is now admitted, and has never been denied, that the general assets of the association should be distributed by the home assignee. But there is a part of the assets in this state regarding which it is doubtful whether this general rule applies. This portion consists of the mortgages deposited with the secretary of state as a condition precedent to the association obtaining a certificate of authority to do business in this state. This deposit is of securities amounting to $30,000 and is made under the provisions of section 3 of the act of 1890. *Gen. Stat. p. 3250.* The language of the statute is that the securities shall be held by the secretary of state in trust for the benefit of the creditors of such corporation within this state.

The insistence on behalf of Mr. Taggert is that there are no creditors in this state. It is argued that the only parties here who have claims against the assets of the estate are shareholders and that they are not creditors, but part owners with all the shareholders in these assets.

I think that a shareholder is not a creditor. Mr. Smith observes that these associations have been not inaptly termed "corporate partnerships," for the reason that the stockholders are in fact copartners in their business relations. *Sm. Rec.* § 322. Judge Hallett, in delivering the opinion in the case of *Patterson* v. *Mercantile Trust Co.* and others in the circuit court of the United States, said: "The shareholders who have petitioned for these assets [in Colorado] are not upon the footing of creditors of the corporation. They cannot, under any circumstances, be creditors until their shares should mature and $200, which would be payable to them upon the completion of the term of eight years, become due. * * * The business of the corporation was not of a character to create indebtedness so as to give people in general the standing of creditors of the corporation. There could not be creditors unless some or all of the officers should have claims against it for services rendered it."

To the same purport are the cases of *Towle* v. *American Building and Loan Association, 61 Fed. Rep. 446*, and *Maynard, Attorney-General*, v. *Granite State Provident Association.*

But the question is, What is meant in the New Jersey statute when it uses the word "creditors?" This must be ascertained by the purpose sought to be attained by the legislature. The title of the act includes loan and building associations, and it certainly could not have been the legislative intent to confine the benefits of its provisions to officers or agents who have claims against the company for services rendered, or to dealers who have furnished stationery or coal or light for the company's office. It is admitted that while the association is a going concern, no shareholder becomes a creditor until the maturity of his shares. But when insolvency occurs, the rights and liabilities of the shareholders and borrowers are radically changed. The borrower becomes liable to pay his debt at once, and upon the confirmation of the final account of the receiver the shareholder becomes entitled to his distributive share. Now, it seems to me, that the right of a shareholder to this ascertained portion of such fund then becomes as secure as the right of a holder of matured shares. The dividend declared in his favor is as much a debt as would have been the par value of his shares had they matured. In both instances the shareholder becomes a creditor, within the meaning of the New Jersey statute.

The deposit of the fund in this state does not, in my judgment, change in the least the proportion to which New Jersey shareholders will be entitled. All the assets here are to be taken into account as a part of the fund to be distributed; but the right to control the fund deposited in this state for the purpose of securing the payment to shareholders in this state of their proportion of the assets to be distributed, resides in this court. Whether such fund is to be turned over to the domiciliary receiver or is to be retained here, or whether a part is to be so turned over and the remainder retained, will depend upon circumstances. All this court can reasonably exact is that its citizens shall not be driven into the court of another state to obtain their distributive shares and that the payment of such shares

shall be secured, so far as the amount received from the securities deposited will furnish security.

The securities deposited with the secretary of state were mortgages upon New Jersey property, and those mortgages are in the hands of the New Jersey receiver for collection. The theory for the calculation of the amount due upon each of those mortgages has just been declared in the case of *Weir* v. *Granite State Provident Association.*

The New Jersey officer will at once proceed to collect the amount of those securities. When they are all, or substantially all, collected, the New Hampshire assignee may file a petition, showing the amount of assets, as nearly as possible, the amount and character of his bond, and then this court will make an order, either that the assets in this state be paid over to Mr. Taggert, upon his giving bond in this state to pay the New Jersey shareholders their distributive shares, or possibly upon the security of his original bond, taken together with the assumption that the court of New Hampshire will see that the shareholders everywhere are paid; or the order may be that sufficient assets may be retained here to be distributed through the hands of the receiver in this state, but according to the proportion fixed by the decree of the court of New Hampshire. The receipts of any collections by Mr. Gray, other than those thus deposited, will, after deducting expenses, be paid over at once.