DISCONTO GESELLSCHAFT, Respondent, vs. UMBREIT, Intervener, Appellant.

SAME, Respondent, vs. SAME, imp., Appellant.

*October 5, 1905—April 17, 1906.*

*Aliens: Right to maintain actions: Comity: Garnishment: Lien: Negotiable instruments: Certificate of deposit: Judgments: Publication of summons: Jurisdiction: Equity.*

1. Aliens who are *sui juris* and not specially disabled by the law of the place where action is brought may there maintain suits to vindicate their rights and redress their wrongs.
2. Plaintiff, a resident and citizen of Germany, occupied nominally the character of a creditor, but really was the mere agent of a foreign trustee of a debtor's estate appointed in involuntary bankruptcy proceedings, to whom plaintiff had agreed to hand over all it might recover.  Plaintiff had no property in Wiscon-

sin, or contract within or with a resident of that state, and brought action in a court of that state against a nonresident alien, temporarily within the state, to recover on a transitory cause of action arising without the state, and by the process of garnishment sought to impound property of the debtor within this state to satisfy its judgment therefrom. U., another creditor of the debtor, was a resident and citizen of Wisconsin, and had secured by garnishment a lien on the same property, but his proceedings were subsequent in point of time to those initiated by the alien creditor. The domestic creditor, having obtained judgment, thereafter intervened in the action brought by the alien. On appeal from a judgment in favor of the alien, held:

(1) The main action could not be maintained by the alien as a matter of right, but only on the principles of comity.

(2) The auxiliary action of garnishment by the alien was governed by the same principles that applied to its main action, notwithstanding the fact that residents and citizens of Wisconsin were parties to the auxiliary action as stakeholders or claimants of impounded property.

(3) Comity does not allow an alien creditor to seize and carry away property within the jurisdiction of Wisconsin courts when a resident creditor stands also at the bar of the same court with a judgment and provisional lien, and thus force such resident creditor to go to a foreign court to collect his debt.

(4) It makes no difference that the home creditor's claim may have accrued after that of the alien; the question is not to be determined by priority in point of time, but by the situation at the time the court is called upon to finally decide which creditor shall receive its aid.

(5) To allow the alien creditor, really the mere agent of a foreign trustee in bankruptcy, to recover would overrule the policy of the state that a foreign trustee or receiver in involuntary bankruptcy proceedings can obtain no title to the debtor's property in Wisconsin.

3. The rule that a resident of another state may sue another nonresident on a transitory cause of action arising out of Wisconsin, in the Wisconsin courts, as a matter of strict right, is based solely upon the provisions of sec. 2, art. IV, Const. of U. S. (declaring that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states), and does not apply to nonresident aliens.

4. By the rules of comity, the courts of one state will voluntarily enforce the laws of a friendly state or nation when, by such

Disconto Gesellschaft v. Umbreit, 127 Wis. 651.

enforcement, they will not violate their own public policy or laws or injuriously affect the interests of their own state or of their own citizens.

5. Under subd. 1, sec. 2769, Stats. 1898, no lien is obtained by an attempted garnishment where the fund is represented by a certificate of deposit.

6. In an equitable action to determine the rights of two creditors to a fund, it appeared, among other things, that one creditor was a nonresident alien whose cause of action arose in Germany, and that it had agreed to turn over all it realized thereon to a trustee of the debtor's estate, appointed in involuntary bankruptcy proceedings had in Germany, and that the other creditor, U., had reduced his claim to judgment, obtained by default upon substituted service of the summons, for the full amount demanded in his complaint and had garnished the fund in question, which consisted of a certificate of deposit issued by a bank. On the trial of such equitable action the court gave judgment in favor of the alien creditor, but made no finding as to the merits of U.'s claim, or that it was named or described in the papers upon which the order of publication was based, and there was no bill of exceptions returned with the record on the appeal from the judgment entered in the equitable action. *Held*, that a mere finding that a judgment was obtained by U. by default upon substituted service was insufficient to authorize the appellate court to hold that any jurisdiction was obtained of the debt due from the bank, since it did not appear affirmatively, from such findings, that the property was described in the complaint, or in the affidavit on which the order of publication was based.

7. In such case the judgment was reversed for the purpose of allowing U. to introduce proof showing that the debt due from the bank was described in the affidavit or in the complaint, in which event judgment was directed in his favor; but in case such was not the fact, it was directed that U. be allowed to introduce extrinsic evidence of the amount justly and equitably due him, which the alien creditor was to be allowed to meet, and the amount found to be justly due U. was directed to be given the preference over the alien creditor's claim.

8. Treaties between the United States and the Kingdom of Prussia dated in 1799 and 1828, referred to in the opinion, are considered to have no bearing on the controversy raised in this action.

9. CASSODAY, C. J., dissenting, is of the opinion that by its garnishment proceedings the alien creditor obtained an equitable lien which should be preferred over that of the resident creditor.

APPEALS from judgments of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. Reversed.

The two actions above named, the first by way of garnishment and the second by way of creditors' bill to reach nonleviable assets, were consolidated for the purposes of trial, and from a judgment in favor of the plaintiff in each action the defendant *Umbreit* appeals. The facts in the cases were not in dispute, and were substantially as follows: The plaintiff is a banking corporation of the German Empire, having its principal banking house at Berlin. Gerhard Terlinden, the defendant in the main action, was and is a subject of the German Empire. In July, 1901, Terlinden absconded from Germany to this country, and was arrested at Milwaukee, August 16, 1901, as a fugitive from justice in extradition proceedings, which proceedings afterwards resulted in his being extradited to Germany. In May, 1901, Terlinden had committed torts in Germany, by which the plaintiff bank had sustained damages amounting to nearly $100,000, and on August 17, 1901, the plaintiff commenced an action by personal service of a summons upon Terlinden in the Milwaukee circuit court to recover its damages for said torts, and at the same time garnished the First National Bank and the Marine National Bank of said city. The First National Bank answered, admitting the previous deposit by Terlinden of two sums aggregating $6,420. The Marine National Bank answered, admitting the previous deposit by him of $5,000, for which it had issued to him a negotiable certificate of deposit in the usual form, which had not been returned. February 19, 1904, the plaintiff recovered judgment in the main action against Terlinden for $94,105.11. The appellant *Umbreit* is, and was at all times named, a citizen and resident of Wisconsin, and rendered services for Terlinden beginning August 16, 1901, and ending February 1, 1903, and, on March

21, 1904, commenced an action against Terlinden to recover for such services, in which action he obtained service by publication only. At the time of the commencement of such action he also garnished the defendants First National Bank and Marine National Bank. *Umbreit* obtained judgment against Terlinden in his main action by default on June 11, 1904, for $7,500 damages; thereupon he intervened in the plaintiff's garnishee action against the First National Bank, and claimed that his lien by garnishment was superior to that of the plaintiff. April 1, 1904, the plaintiff brought an action in equity in the nature of a creditors' bill against Terlinden, the Marine National Bank, John C. Ames, and *Umbreit,* the object of the action being to aid its lien by garnishment against the Marine Bank, and it demanded judgment that the $5,000 certificate of deposit, which was in the possession of the defendant Ames, not indorsed, be subjected to the lien of its judgment against Terlinden, and that the claims of *Umbreit* and the other defendants be cut off. In this action a temporary injunction, preventing the transfer or payment of the certificate of deposit, was issued and served upon the defendants. The defendant Ames surrendered the certificate into court and disclaimed title thereto; the defendant *Umbreit* answered, setting up his own judgment and garnishment, and claiming that his lien thereby was superior to that of the plaintiff. On or about July 27, 1901, proceedings in bankruptcy were instituted in Germany against Terlinden, and one Hecking was appointed trustee of the estate. On or about August 20, 1901, the plaintiff presented its claim to said trustee in bankruptcy, being the same claim upon which the main action was brought. The main action was commenced with the approval of the trustee, Hecking, and after its commencement the plaintiff agreed with Hecking that all moneys he should recover in the action should form part of the estate in bankruptcy and be handed over to trustee Heck-

ing. It appears that the German bankruptcy act contains the following provision (sec. 14):

"Pending the bankruptcy proceeding neither the assets nor any other property of the bankrupt are subject to attachment or execution in favor of individual creditors."

The garnishment action against the First National Bank and the bill in equity against the Marine National Bank were thereupon consolidated and tried together, and the court, upon the above facts, awarded the money in both banks to the plaintiff.

For the appellant there were briefs by *August C. Umbreit, in propria persona, Joseph B. Doe,* attorney, and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *Mr. Umbreit* and *Mr. Doe.* They contended, *inter alia,* that domestic creditors will be protected to the extent of not allowing property or the funds of a nonresident debtor to be withdrawn from the state before such domestic creditors have been paid. Every country will first protect its own citizens. *Woodward v. Brooks,* 128 Ill. 222; *Chicago, M. & St. P. R. Co. v. Keokuk N. P. Co.* 108 Ill. 317; *Catlin v. Wilcox Silver-Plate Co.* 123 Ind. 477; *Chafee v. Fourth Nat. Bank,* 71 Me. 514, 524; *Bagby v. Atlantic, M. & O. R. Co.* 86 Pa. St. 291; *Lycoming F. Ins. Co. v. Wright,* 55 Vt. 526; *Thurston v. Rosenfeld,* 42 Mo. 474; *Willitts v. Waite,* 25 N. Y. 577. Citizens and residents of a country where insolvency proceedings have been instituted are bound by such proceedings and cannot pursue the property of an insolvent debtor in another country. *Cole v. Cunningham,* 133 U. S. 107; *Linville v. Hadden,* 88 Md. 594; *Chafee v. Fourth Nat. Bank,* 71 Me. 314; *Einer v. Beste,* 32 Mo. 240; *Long v. Girdwood,* 150 Pa. St. 413; *Bacon v. Horne,* 123 Pa. St. 452. A creditor, by proving his claim in bankruptcy or insolvency proceedings, submits to the jurisdiction of the court in which the proceeding is pending and cannot pursue his remedy elsewhere. *Cooke v. Coyle,* 113 Mass. 252; *Ormsby v. Dearborn,* 116 Mass. 386; *Batchelder*

*v. Batchelder,* 66 N. H. 31; *Wilson v. Capuro,* 41 Cal. 545; *Wood v. Hazen,* 10 Hun, 362; *Clay v. Smith,* 3 Pet. 411. Where both parties, plaintiff and defendant, are residents of a foreign state, a plaintiff cannot come into this state and obtain an advantage by our law which he could not obtain by his own. If he seeks to nullify the law of his own state and asks the court to aid him in so doing, he cannot have such assistance, if for no other reason than that it is forbidden by public policy and the comity which exists between states and nations, which comity will always be enforced when it does not conflict with the rights of domestic citizens. *Bacon v. Horne,* 123 Pa. St. 452; *In re Waite,* 99 N. Y. 433; *Bagby v. Atlantic, M. & O. R. Co.* 86 Pa. St. 291. Citizens of a foreign state or country will not be aided by the courts of this state to obtain by garnishment a preference of their claim against a foreign debtor, in disregard of proceedings in their own country for the sequestration of a debtor's estate and the appointment of a trustee thereof in bankruptcy. *Long v. Girdwood,* 150 Pa. St. 413. It is the uniform rule and doctrine of all courts that the principles of comity do not require that the courts confer powers upon a foreign receiver or trustee in bankruptcy, or permit him to bring and maintain actions in this state that interfere with and impair the rights of domestic creditors. *Humphreys v. Hopkins,* 81 Cal. 551; *Ward v. Pacific Mut. L. Ins. Co.* 135 Cal. 235; *Hunt v. Columbian Ins. Co.* 55 Me. 290; *Pierce v. O'Brien,* 129 Mass. 314; *Rogers v. Riley,* 80 Fed. 759; *Catlin v. Wilcox Silver-Plate Co.* 123 Ind. 477.

For the respondent there were briefs by *Winkler, Flanders, Smith, Bottum & Fawsett,* and oral argument by *F. C. Winkler.*

WINSLOW, J. The general question here presented is whether a nonresident and alien creditor may sue a nonresident and alien debtor in the courts of this state upon a cause

of action accruing in a foreign country, and may by means of garnishment or other provisional remedy impound property of the debtor within the state, and obtain judgment permitting it to apply such property upon the debt when one of our own citizens is shown also to be a creditor of the alien debtor and to have taken subsequent legal proceedings to impound the property for the payment of his claim. The general rule that all foreigners *sui juris* who are not specially disabled by the law of the place where the suit is brought may there maintain suits to vindicate their rights and redress their wrongs is undoubted. Story, Conflict of Laws (8th ed.) § 565; 2 Cyc. 107, 108, art. "Aliens." Resident alien friends are said to have practically the same rights and privileges, so far as the protection by law of their persons, liberty, reputation, and property rights is concerned, as citizens; and to protect these rights they must possess the legal remedies necessary for their due vindication. Alien friends, whether resident or nonresident, also have, in the absence of disabling statutes at least, the right to take, hold, enjoy, and dispose of property, real and personal, and to make contracts with residents, and so must have the right to invoke legal remedies to maintain these rights. In both cases the remedies are commensurate with the rights to be protected.

The plaintiff, however, is within neither of these principles. It is a nonresident, it has no property of any kind within the state, it has made no contract within the state or with any resident of the state. It has brought action against another nonresident alien, temporarily within the state, to redress a wrong committed without the state, and it asks the courts of this state not only to give it judgment for that wrong, but also to lend the aid of its process to impound property within the state and satisfy such judgment therefrom to the prejudice of one of the state's own citizens who has a claim against the same debtor. It is true that the cause of action is transitory and the parties both within the jurisdic-

tion of the court, and so the court has jurisdiction, and may doubtless rightly entertain the cause; but is the court compelled to do so, because of an inherent right which the alien has to demand the action of the court; or does it do so upon the principles of comity, with the right to refuse relief when such relief prejudices the interests of resident citizens? This is the initial question in the case, and the one upon which, as it seems to us, it must turn. In considering this question there should be no confusion of ideas as to the exact situation and relation of the various actions and proceedings. It must be kept in mind that the original action is between two nonresident aliens upon a foreign cause of action; the appeals in the present cases are from judgment in two auxiliary actions brought in aid of the main action, to impound property, which actions are, in effect, only proceedings to secure payment of the judgment in the main action by equitable execution upon nonleviable property. Had the property sought to be reached been tangible and leviable in its nature, writs of attachment and execution issued in the main action would have accomplished the same purpose. It is manifest, therefore, that if the main action cannot be maintained as matter of right, but only (if at all) on the principles of comity, the auxiliary actions or equitable proceedings in the nature of attachment and execution must fall under the same rule which applies to the main action out of which they spring, notwithstanding the fact that residents of the state may be parties to the auxiliary. actions as stakeholders or claimants of the impounded property. That the main action is not an action maintainable as a matter of right, but only upon the principles of comity, seems unquestionable.

This court has held that a resident of another state may sue another nonresident upon a transitory cause of action arising outside of this state, in our courts, as a matter of strict right. *Eingartner v. Illinois S. Co.* 94 Wis. 70, 68 N. W. 664. This ruling was, however, based solely upon

that provision of the constitution of the United States which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." Sec. 2, art. IV, Const. of U. S. It will be noticed that the present chief justice, though concurring in the result, disagreed with the court in that case upon this question, and took the position that the action could not be maintained, as matter of right, even under the constitutional provision named, but only upon the principles of comity. It is very manifest that, had the case been one between alien nonresidents, to whom the constitutional provision does not apply, the court would have taken the same view. It is not intended, however, to base the decision of this case upon a mere inference of this nature, nor is it necessary. The principle that an action between nonresident aliens upon a cause of action arising in a foreign country is entertained or not in the courts of this country as the principles of comity may dictate is very well supported. It is said by Mr. Wheaton in his Elements of International Law (8th ed., edited by R. H. Dana) pt. 2, § 140:

"It is the duty as well as the right of every nation to administer justice to its own citizens; but there is no uniform and constant practice of nations as to taking cognizance of controversies between foreigners. It may be assumed or declined at the discretion of each state, guided by such motives as may influence its judicial policy."

Mr. Webster, in his argument in the case of *Bank of U. S. v. Primrose,* defined the doctrine of comity as follows:

"It is, in general terms, that there are, between nations at peace with one another, rights, both national and individual, resulting from the comity or courtesy due from one friendly nation to another. Among these is the right to sue in their courts, respectively." 6 Webster, Works, 117.

The principle is impliedly recognized in *Mason v. Ship 'Blaireau,* 2 Cranch, 240. This was a libel for salvage upon a French vessel which had been damaged in a collision on the high seas and brought into an American port by a crew put

Disconto Gesellschaft v. Umbreit, 127 Wis. 651.

on her by an English vessel. All the parties were foreigners, and a question as to the jurisdiction of the court was raised, and thus treated by Chief Justice MARSHALL (p. 264):

"These doubts [*i. e.* doubts as to the jurisdiction] seem rather founded on the idea that upon the principles of general policy this court ought not to take cognizance of a case arising entirely between foreigners, than from any positive incapacity to do so. On weighing the considerations drawn from public convenience, those in favor of the jurisdiction appear much to overbalance those against it, and it is the opinion of this court that whatever doubts may exist in a case where the jurisdiction is objected to, there ought to be none where the parties assent to it."

It is very manifest that the case was entertained and decided not because the alien parties had a right to demand it, but because considerations of public convenience seemed in that case to require it. Had considerations of public policy, convenience, or the protection of the interests of our own citizens been upon the other side of the question, it seems evident that the court would have refused to exercise its jurisdiction. This is really the principle of comity. It is a question of discretion in the exercise of power, not a question of the existence of the power itself, for that is admitted.

In an early case in New York it was said that while our courts may take cognizance of torts committed on the high seas on board a foreign vessel where both parties are foreigners, still "it must, on principles of policy; often rest in the sound discretion of the court to afford jurisdiction or not according to the circumstances of the case. To say that it can be claimed in all cases, as matter of right, would introduce a principle which might oftentimes be attended with manifest disadvantage and serious injury to our citizens abroad as well as to foreigners here." *Gardner v. Thomas,* 14 Johns. 134. This doctrine was approved in *Johnson v. Dalton,* 1 Cow. 543; *Dewitt v. Buchanan,* 54 Barb. 31; *Olzen v. Schierenberg,* 3 Daly, 100; and the doctrine was also held in that

state to apply to actions between nonresident citizens of other states (*Burdick v. Freeman,* 120 N. Y. 421, 24 N. E. 949), which, as we have seen, is contrary to the rule in this state as declared in the *Eingartner Case, supra.* The same rule as to foreigners is held in Michigan (*Great Western R. Co. v. Miller,* 19 Mich. 305), where it was said that "where the parties are not residents of the United States and the trespass was committed abroad, the right of action in our courts can only be claimed as a matter of comity, and they are not compellable to proceed in such cases." See, also, 7 Am. Law Rev. 417, art. "Suits Between Aliens." The doctrine is reasonable; in fact, any other doctrine would seem to be an anomaly. The laws of a state are enacted primarily for the regulation, benefit, and protection of persons, rights, and property within its jurisdiction. To hold that two foreigners may import, bodily, a cause of action, and insist, as a matter of right, that taxpayers, citizens, and residents shall await the lagging steps of justice in the ante-room while the court hears and decides the foreign controversy, seems, on the face of it, to be unreasonable, if not absurd.

Holding, therefore, that the main action in the present case, with its equitable auxiliary proceedings to impound nonleviable property, is to be maintained in the courts of this state (if at all) upon the ground of comity rather than upon the ground of right, we are to inquire what the general principles of comity are, and what circumstances in the present case are to be considered in deciding whether the courts of this state should extend their aid to the plaintiff. Comity is defined as: "Courtesy; a disposition to accommodate." By the rules of comity between nations, the courts of one state will voluntarily enforce the laws of a friendly state or nation when, by such enforcement, they will not violate their own public policy or laws or injuriously affect the interests of their own state or of their own citizens. While this court has not had occasion to consider the application of the principles

of comity to an action between nonresident aliens upon a
cause of action accruing abroad, like the present, it has passed
upon cases involving other phases of the question, and has
clearly recognized the principle and its limitations. Thus,
in *Mowry v. Crocker,* 6 Wis. 326, this court held that a vol-
untary assignment of property for the benefit of creditors
made in another state passes the title to personal property of
the assignor within this state, and will be given full effect by
the courts of this state; and this ruling was followed in *Cook
v. Van Horn,* 81 Wis. 291, 50 N. W. 893, and recognized in
*Segnitz v. Garden City B. & T. Co.* 107 Wis. 171, 83 N. W.
327, as well as in *Gilman v. Ketcham,* 84 Wis. 60, 54 N. W.
395. But in *McClure v. Campbell,* 71 Wis. 350, 37 N. W.
343, it was held that an assignment of property made in an-
other state pursuant to a law which amounts to a state bank-
rupt law has no extraterritorial effect, and will not be given
effect by the courts of this state as to property within this
state, and this doctrine has been subsequently approvingly
cited in *Filkins v. Nunnemacher,* 81 Wis. 91, 51 N. W. 79;
*Wells, Fargo & Co. v. Walsh,* 87 Wis. 67, 57 N. W. 969;
*Hughes v. Hunner,* 91 Wis. 116, 64 N. W. 887; and *Segnitz
v. Garden City B. & T. Co., supra.* The vital distinction be-
tween the two principles is that in the first case the title to the
property passes by act of the owner, which is effective as to
personal property wherever situate, while in the second case
the assignment is either actually or practically made by de-
cree of the court or operation of law in proceedings *in in-
vitum,* and hence it has no effect outside of the jurisdiction of
the court. See, also, *Smith v. C. & N. W. R. Co.* 23 Wis.
267. It is well to note, however, that even in the first line of
cases, where effect is given to the assignment in this state, the
ruling is distinctly based upon the principle of interstate com-
ity, though the principle was not discussed at any length in
any of the cases.

In *Gilman v. Ketcham,* 84 Wis. 60, 54 N. W. 395, the

subject received attention in an opinion written by the late
Mr. Justice PINNEY, which is valuable and instructive. In
this case it appeared that a New York manufacturing corpo-
ration had commenced proceedings in the courts of that state
for its own voluntary dissolution, and had been adjudged in-
solvent and dissolved, and all its property, effects, and credits
transferred to the defendant Ketcham as receiver; that in
course of the proceedings an order had been made enjoining
all creditors of the corporation from commencing or prose-
cuting any actions against the corporation to collect their
debts, which order had been served upon Gilman, who resided
in New York; that the New York statute under which the
proceedings were brought did not contemplate or provide for
a discharge of the debtor, but simply for division of its prop-
erty among its creditors and stockholders; that, after the in-
junctional order aforesaid had been made and served, Gilman
commenced action in this state against the corporation, and
garnished one of its debtors in this state, who brought the
money into court, and Ketcham was thereupon interpleaded
and made claim to the fund, by reason of the facts above
stated. In this case it was held that the effect of the volun-
tary dissolution proceedings in New York was to place all
of the corporate property and assets *in custodia legis,* to be
collected and applied by the receiver; that there was nothing
in the proceeding or the statutes of New York in contraven-
tion with the law or public policy of this state, and that to
give effect to such proceedings would not prejudice the rights
of any citizen of this state. On these grounds the claim of the
receiver was recognized and upheld upon the principles of
comity, as against the plaintiff who was seeking the aid of
the courts of this state in violation of the law, and evading
the process of his own state. In discussing the question it
was said:

"Our own citizens, in a proper case, would no doubt be
protected against the effect of such extraterritorial act and

adjudication, if injurious to their interests or in conflict with the laws and public policy of Wisconsin, and effect would not be given to it at the expense of injustice to our own citizens."

This was not a chance remark, but a careful statement of the principle of comity as applied to the case before the court, and was thoroughly supported by citations of and quotations from the authorities, which need not be repeated here. This case has since been cited with approval in *Hughes v. Hunner,* 91 Wis. 116, 120, 64 N. W. 887; *Parker v. Stoughton M. Co.* 91 Wis. 174, 180, 64 N. W. 751; *Wyman v. Kimberly-Clark Co.* 93 Wis. 554, 559, 67 N. W. 932; *Finney v. Guy,* 106 Wis. 256, 82 N. W. 595; and by the present chief justice in his concurring opinion in *Eingartner v. Illinois S. Co.* 94 Wis. 70, 84, 68 N. W. 669, where he also says:

"Actions like the one at bar [which was an action by one nonresident against another for a tort committed in Illinois] are generally governed by the principles of interstate comity."

In *Finney v. Guy, supra,* it is said in the opinion of Mr. Justice MARSHALL:

"This court recognizes fully the importance of interstate comity and uniformly freely gives effect to it as regards the laws of sister states when it will not seriously violate the policy of our own laws or the rights of our own citizens. . . . A liberal course in the enforcement of the laws of other states in proper cases should be the rule, but the paramount duty of our judicial system is to safeguard our own state policy and prevent injustice to our own people within reasonable limits." 106 Wis. 276, 277 (82 N. W. 602).

Upon these principles, then, we are to determine whether the plaintiff should be allowed by the courts of this state to take the moneys which it has impounded, and in determining this question a brief reference to the facts at this point will be helpful. Terlinden committed a tort (the nature of which does not appear) against the plaintiff in Germany in May, 1901, and fled to this country, bringing the money in question and depositing it in bank. It appears to have been

his own money; at least there is nothing before us to show to the contrary. The intervener, *Umbreit,* began to render services to Terlinden (the nature of which does not appear) on August 16, 1901, and continued to render services until February 1, 1903, when his bill amounted to $7,500, which has not been paid. The plaintiff commenced suit against Terlinden to recover damages for said tort August 17, 1901, and obtained judgment for more than $94,000 February 19, 1904; more than $85,000 thereof being still unpaid. At the time of commencing suit it garnished the banks. *Umbreit* brought action against Terlinden in March, 1904, and garnished the banks, obtained service by publication, and was given judgment by default in his main action for $7,500 June 11, 1904. Terlinden was thrown into involuntary bankruptcy in Germany July 27, 1901, and the plaintiff has taken part in the proceedings. The German law prohibits the creditor of a bankrupt from seizing the bankrupt's property by attachment or execution pending the bankruptcy proceedings. The plaintiff, after the commencement of its action, agreed with the trustee in bankruptcy that it would hand over all moneys it might recover in the action to the trustee to go into the general estate.

It may be admitted that there is nothing contrary to our laws or public policy in the prosecution of an action by a foreigner against another to recover damages for a tort committed abroad, provided that the legal business of citizens is not materially interfered with thereby. The policy of our laws is to give every man a certain and efficient remedy in the courts for the wrongs which he may suffer. It may be admitted, also, that by the mere prosecution of the action to judgment in the present case no interest of the public nor of any of our citizens was prejudiced. But the plaintiff was not content simply to prosecute his action to judgment. At the inception of his action he asked and obtained the help of the court to seize and hold property of the defendant within.

the jurisdiction of the court to answer the demands of its expected judgment. At this very time Terlinden was indebted to *Mr. Umbreit,* a citizen of our own state, in some amount, and evidently upon a contract for continuous service. There is nothing in the record to impeach the *bona fides* of that debt or service. Before the plaintiff obtained any judgment on its claim, *Umbreit's* claim had become large; action was begun upon it in March, 1904, the same property impounded by garnishment, and in June, 1904, judgment was obtained. Thereupon *Umbreit* intervened in the plaintiff's garnishment action, and thus the foreigner and the citizen were brought face to face, each demanding the aid of the court in subjecting the funds in bank to the payment of its claim in preference to the other. If the foreigner was entitled to maintain his action and prosecute all the statutory auxiliary remedies as matter of right, his present claim would have to be sustained, because he obtained the prior lien by garnishment (so far, at least, as the funds in the First National Bank are concerned) ; but being only entitled to ask the help of the court on the ground of comity he must, necessarily, only take such help as the rules of comity will give. It is confidently believed that no court in such case ever has allowed or should allow the foreigner to seize and carry away property within the jurisdiction when a resident creditor stands also at the bar with his judgment and his provisional lien, and thus force such resident creditor to go to a foreign country to collect his debt. If such action be not prejudicial to the rights and interests of our own citizens, it is difficult to see what action would be prejudicial. Nor does it make any difference that the home creditor's claim may have accrued after that of the foreign creditor; the question is not to be determined by priority in point of time any more than by priority of garnishment, but by the situation at the time when the court is called upon to finally decide which creditor shall receive its aid. So, if the case were devoid of any other facts, comity would require that the interests of the

home creditor be protected. But there are other facts which have a material bearing. The foreign creditor is here nominally in his character as a creditor, but really as the mere agent of the foreign trustee in bankruptcy, who could not himself come here and assert any right to the property. The creditor has agreed to hand over to the trustee for general distribution all that he may recover in this action. Thus it is proposed by the aid of our courts to set at naught the policy of our own law to the effect that a foreign trustee or receiver in involuntary bankruptcy proceedings obtains no title to the debtor's property within this state. This is certainly imposing upon good nature, and comity is, after all, simply good nature. So we reach the conclusion that so far as the case against the First National Bank is concerned, the judgment is erroneous and should have been in favor of the intervener.

As to the equitable action in aid of the garnishment against the Marine National Bank, while the general principles of comity already discussed are equally applicable, there are some further considerations. In this case neither party obtained any lien on the fund by reason of the attempted garnishments, because it was represented only by a negotiable instrument which the bank had issued to Terlinden. Stats. 1898, sec. 2769, subd. 1. The equitable action was, therefore, brought by the plaintiff, to which *Umbreit* was made a party, in order to reach the indebtedness represented by the negotiable instrument and subject it to any judgment which might be obtained in the main action. At the time this action was brought *Umbreit* had brought his action against Terlinden, obtained service by publication only, and had attempted to garnish the Marine National Bank, but had obtained no judgment. In the complaint in the equitable action the plaintiff alleged that *Umbreit* claimed a lien on the instrument by reason of his subsequent garnishment of the bank, but alleged that such garnishment was without validity and without jurisdiction, and therefore prayed that *Um-*

*breit's* lien be cut off. *Umbreit* answered, claiming an indebtedness of Terlinden to him of $7,500 as aforesaid, and setting up the commencement of his action therefor and his garnishment of the Marine Bank. The court found that *Umbreit* commenced his action and obtained service by publication only; that he obtained his judgment by default for the full amount claimed, but made no findings as to the merits of *Umbreit's* claim. The court also found that *Umbreit,* at the commencement of his suit, served garnishee process on the Marine National Bank, but concluded that, as the only liability of the Marine Bank arose by reason of the issuance of a negotiable instrument to Terlinden, no lien thereon or on the liability of the bank was secured by either plaintiff's or defendant's garnishment proceedings.

There is no bill of exceptions in the case, and hence the findings of fact are solely to 'be considered, and by them we are only informed that *Umbreit* obtained judgment by default upon substituted service of the summons, and the question has occurred to us (though not suggested in the briefs) whether such a judgment constitutes any proof that any sum was owing from Terlinden to *Umbreit;* in other words, is the judgment itself proof of personal liability, especially when the parties are litigating their rights before a court of equity ? The validity and justice of the plaintiff's judgment in the main action cannot be questioned, because it was rendered after personal service of the summons and is unappealed from, but the defendant *Umbreit* has no such judgment and is not found, as matter of fact, to have had any claim against Terlinden, except his judgment obtained by default on substituted service. When he comes into a court of equity and makes his affirmative claim for priority of right in property which the plaintiff had in form equitably impounded and upon which he (*Umbreit*) had no actual lien, must there not be a finding that he actually had a just claim in order to justify the court in protecting him ? Is his judgment any

proof of his claim against Terlinden, except as to property garnished or attached? The principle is familiar and well settled that in an action against a nonresident, where there is only substituted service of the summons, the court acquires no jurisdiction for mere purposes of personal adjudication, but only to enter a judgment with reference to or to be enforced upon property within the state or a judgment concerning the status of one of our own citizens. *Moyer v. Koontz,* 103 Wis. 22, 79 N. W. 50; *Pennoyer v. Neff,* 95 U. S. 714. The judgment in such action will, of course, be effective so far as it affects or may be enforced against the property of the defendant which has actually been seized by attachment or garnishment. It has also been held by this court, contrary to the rulings in some jurisdictions, that it is not essential that the property within the state be seized by writ of attachment, but that, if the facts required by the statute to authorize the order for publication appeared by proper affidavit, the court would acquire jurisdiction to render a judgment good at least against the property described in the moving papers, providing it had not been removed from the state or sold to an innocent purchaser before the rendition of the judgment. *Jarvis v. Barrett,* 14 Wis. 591; *Gallun v. Weil,* 116 Wis. 236, 92 N. W. 1091. But it was further held, prior to the passage of ch. 29, Laws of 1868 (secs. 13–15, ch. 124, Tay. Stat.), that the property within the state must be specifically described in the moving affidavit upon which the order of publication is based or the court will acquire no jurisdiction. *Winner v. Fitzgerald,* 19 Wis. 393. The property so described need not be property which can be attached, but may be such property which can only be reached by creditors' bill, such as debts owing by a resident to a nonresident, and it is now sufficient if it be described in the complaint. *Bragg v. Gaynor,* 85 Wis. 468, 55 N. W. 919.

The act of 1868, above named, as codified by subd. 1, sec. 2639, R. S. 1878, added a new class of cases in which service by publication was authorized, namely, cases where

the cause of action arose in this state and the court has ju-, risdiction of the subject of the action.   In *Witt v. Meyer*, 69 Wis. 595, 35 N. W. 25, this court expressed a grave doubt whether, in such case, the court would obtain any jurisdiction either of person or property unless it also appeared by the affidavit that the defendant had property in this state which was described; citing, in addition to *Jarvis v. Barrett, supra, Rape v. Heaton*, 9 Wis. 328, and *Jones v. Spencer*, 15 Wis. 583.   Just previous to this decision it had been held, in *Smith v. Grady*, 68 Wis. 215, 31 N. W. 477, that a foreign personal judgment founded alone upon service of process outside of the jurisdiction, there being no property within that jurisdiction, was absolutely void; citing *Jarvis v. Barrett, supra*. In view of the doctrine announced by the supreme court of the United States in *Pennoyer v. Neff*, 95 U. S. 714, which is a leading case on this subject, and which was cited with approval by this court in *Moyer v. Koontz, supra*, we think it must be considered as settled that the doubt expressed in *Witt v. Meyer* was well founded, and that such judgments, except those affecting the status of a citizen, can go no farther than to be effective as to property within the state at the time of the commencement of the action, which property must be described in the moving papers.   Now, it does not appear in the findings in the present case that the debt from the Marine Bank to Terlinden was named or described in the papers upon which the order of publication was based.   It is true that it appears that judgment was entered in the action, and it may be claimed that the presumption of regularity in the proceedings of a court of general jurisdiction should be indulged in.   The difficulty with this claim is that it appears that *Mr. Umbreit* did have a valid garnishment of the funds in the First National Bank, which he acquired at the time he commenced his suit, and this would fully justify the court in entering the formal judgment in the main action, so the office of any presumption seems very doubtful at best.

We conclude that in the case of the creditors' bill against

the Marine Bank the mere finding that a judgment was obtained by *Umbreit* by default upon substituted service is insufficient to authorize this court to hold that any jurisdiction was obtained of the debt due from the bank, because it does not appear affirmatively that in that action this property was described in the affidavit or complaint on which the order of publication was based. In view of the fact that this point seems to have been overlooked in the trial of the case, judgment will not be directed here, nor, on the other hand, will a new trial of the case be ordered. The Marine Bank Case will be sent back with directions to allow the defendant *Umbreit* to introduce proof showing that the debt due from the Marine Bank was properly described in the affidavit or complaint upon which the order for publication was based, in which event his judgment will be given preference over the plaintiff's claim to the full amount thereof; in case, however, such was not the fact, he should be allowed to introduce extrinsic evidence of the amount justly and equitably due him, and the plaintiff should be allowed to meet such claim by evidence to the contrary, and the amount found by the court to be justly due *Mr. Umbreit* over and above what he may actually realize from the judgment in the garnishment action should be given preference, after which the plaintiff's claim should be allowed.

*By the Court.*—The judgments in both actions are reversed, with costs. The garnishment action is remanded with directions to render judgment for the defendant *Umbreit* that he recover the sum garnished, with costs. The equitable action is remanded to take further proof, and for judgment in accordance with the opinion.

CASSODAY, C. J. (*dissenting*). I briefly state the grounds of my dissent in this case. It seems to be well established that one alien may sue another alien in the state courts upon contract made abroad or for a tort committed in a foreign coun-

try, if the defendant is transiently in the state and service is had upon him as in the case at bar. 2 Am. & Eng. Ency. of Law (2d ed.) 66, 67; 2 Cyc. 105–107. This seems to be conceded. Such right to maintain suits in the state courts, however, is of little or no value unless the plaintiff in such action is entitled to the remedies given to domestic creditors. And so, "by comity and the laws of the states, resident aliens have the right to the same remedies in courts as citizens, and no court will deny those rights without positive legislation taking them away;" and this rule applies to all personal actions. 2 Cyc. 107, 108. Of course the *lex fori* governs in all matters relating to the remedy and the course of procedure. 22 Am. & Eng. Ency. of Law (2d ed.) 1383.

"The right to proceed by process of attachment has been limited by the statutes of some of the states to a citizen of the state or to a citizen of some other of the United States. As a rule, however, at the present time this right is not ordinarily affected by the question of citizenship, and it is generally immaterial that the attaching creditor is a nonresident." 4 Cyc. 406.

"Where the statutory grounds for the issuance of the writ of garnishment exist, the proceedings may be instituted against all persons, both individual and corporate, and irrespective of whether they are residents or nonresidents, unless, of course, they enjoy some special immunity from suit. The statutes authorizing the issuance of writs of garnishment are, as a rule, very broad in regard to the persons who may take advantage of the process, and generally provide for its issuance on the application of *any person;* and the word 'person,' as so used, has been held to include all individuals, nonresidents as well as residents, corporations, and sovereignties." 14 Am. & Eng. Ency. of Law (2d ed.) 752.

"Since, as a general rule, the garnishing creditor acquires no greater right in the property or credits in the hands of the garnishee than that possessed by the defendant at the time of the service of the writ of garnishment, a prior valid sale or assignment or lien or incumbrance thereon will take precedence over a subsequent garnishment. On the other hand, as

the garnishing creditor succeeds to all the rights and interests of the defendant at the service of the writ, the rights of the garnishing creditor are not affected by any alienation by the defendant or incumbrance created or arising subsequently to the service of the writ." 14 Am. & Eng. Ency. of Law (2d ed.) 867.

The same is true as to attachments. 4 Cyc. 632. Our statutes give the right of garnishment in broad terms, and extend to actions "to recover damages founded upon contract, express or implied," and extend to cases where "the defendant fraudulently contracted the debt or incurred the obligation respecting which the action is brought" and. to cases where the "defendant is a foreign corporation" or a nonresident. Stats. 1898, secs. 2731, 2753. This court has repeatedly held that proceedings by garnishment or creditors' bill to reach nonleviable assets are, in effect, an equitable levy from the time of service of process. *La Crosse Nat. Bank v. Wilson,* 74 Wis. 391, 43 N. W. 153; *Bragg v. Gaynor,* 85 Wis. 468, 55 N. W. 919. It follows from what has been said that the plaintiff was properly allowed to maintain this action against Terlinden for the tort committed by him in Germany in May, 1901, and, since personal service was had upon him in Milwaukee August 17, 1901, and the First National Bank of Milwaukee garnished on that day, the funds in the bank were subject to garnishment, and the plaintiff by such garnishment obtained an equitable lien upon the funds deposited in the bank August 14, 1901.

The fact that the plaintiff obtained judgment against Terlinden February 19, 1904, for a large amount, and that judgment never having been appealed from, would seem to conclusively establish the right of the plaintiff to maintain this action against Terlinden. The plaintiff having the right to maintain this action against Terlinden, then, unless there is some law to the contrary, or the plaintiff is precluded by the bankruptcy proceedings in Germany, it would seem that he

also had the right to maintain garnishment proceedings against the bank. The plaintiff here is acting in harmony and co-operating with the German trustee and the German consul at Chicago for the benefit of all the creditors of Terlinden and not in violation of the clause of the German bankrupt act quoted in the opinion filed. The whole purpose of that provision, as I understand, was to prevent one creditor by such attachment or execution from obtaining a preference over other creditors in the courts of Germany. Here, in defiance of comity, it is invoked to give an American creditor preference over all German creditors, and on a claim which had no existence when the bankruptcy proceedings were instituted, but accrued afterwards. Besides, that provision, as I understand, relates wholly to the remedy for proceedings in Germany. The remedies here given by our courts are, as I understand, given and regulated entirely by our statutes, and not by the statutes of Germany. The provision quoted does not go to the right of action but to the remedy merely. Terlinden is here adjudged to have fraudulently obtained from the plaintiff the money here sought to be reached by garnishment. The right of action has been adjudged to be in the plaintiff. According to the judgment Terlinden had no defense. There is no attempt on the part of the plaintiff to obtain a preference over other creditors of Terlinden. On the contrary, and as the appellant claims, the plaintiff was acting in harmony with the trustee and for the benefit of all the creditors. Should the appellant's claim which accrued subsequently to the bankruptcy proceedings be allowed, it would to that extent defeat the bankruptcy proceedings and give a preference to an American creditor over all German creditors. It is true that the rule of comity does not hold courts down to strict legal or treaty obligations. But it requires states or nations to give effect to foreign laws and judicial proceedings, not so much—in the language of Mr. Justice STORY—as "a matter of comity or courtesy as a mat-

ter of paramount moral duty." Story, Confl. of Laws, 32. It is not only a friendly courtesy but a mutual courtesy, which requires the courts of the one state or country to do what the courts of the other states or country would be expected to do under similar circumstances. Here the domestic creditor is allowed to supersede and set aside an equitable lien obtained long before the claim of the domestic creditor accrued, and upon the sole ground that the garnishing creditor is an alien. Should a Wisconsin citizen embezzle the funds of another Wisconsin citizen and then abscond to Germany, and the Wisconsin creditor pursue him to that country and obtain personal service upon him by proceedings in the courts of that country, and then attach or garnish the funds so embezzled, it would hardly be expected that a German court would allow the lawyer whose claim accrued after such attachment or garnishment, in resisting the same, to supersede such attachment or garnishment and obtain the funds so embezzled for his remuneration in performing such service. If it did we would hardly recognize it as an act of comity or courtesy to an American citizen or American law, much less "as a matter of paramount moral duty."

In my opinion the judgment should be affirmed in this case and modified in the other, according to the rights of the parties under the creditors' bill.

The respondent moved for a rehearing.

*Winkler, Flanders, Smith, Bottum & Fawsett,* attorneys, and *F. C. Winkler,* of counsel, for the motion.

*Joseph B. Doe, contra.*

The motion was denied April 17, 1906, and the following opinion was filed May 8, 1906:

WINSLOW, J. Upon motion for rehearing in these cases our attention is called to art. I of the treaty concluded be-

tween the United States and the Kingdom of Prussia in 1828, which reads as follows:

"There shall be between the territories of the high contracting parties a reciprocal liberty of commerce and navigation. The inhabitants of their respective states shall mutually have liberty to enter the ports, places, and rivers of the territories of each party wherever foreign commerce is permitted. They shall be at liberty to sojourn and reside in all parts whatsoever of said territories, in order to attend to their affairs; and they shall enjoy, to that effect, the same security and protection as natives of the country wherein they reside, on condition of their submittng to the laws and ordinances there prevailing."

Attention is also called to a provision in the treaty of 1799 between the same parties as follows:

"Each party shall endeavor by all the means in their power to protect and defend all vessels and *other effects* belonging to the citizens or subjects of the other, which shall be *within the extent of their jurisdiction by sea or by land.*"

We have been unable to see that either of these treaty provisions has any bearing on the questions in controversy here.

*By the Court.*—Motion denied.