The complainant is a citizen and resident of Australia. The individual defendants, the Loebs, are citizens and residents of the State of New York, and the defendant Ellbee Fur Trading Company is a corporation of that state. The defendant First National Bank, is a corporation of the United States located in Jersey City.
Some years ago the Loebs became indebted to complainant in a large sum. After incurring this debt, they organized the trading company and transferred to it their assets and business. Thereafter, in 1922, the complainant sued out of the Hudson circuit court a writ of attachment against the Loebs and a levy was made thereunder against the bank account of *Page 207 
the trading company in the First National Bank of Jersey City. This account then amounted to $22,108.43.
The following day, the bill of complaint in this cause was filed in aid of the attachment in order to establish that the bank account was, in equity, the property of the Loebs. In 1925, complainant recovered judgment in the attachment suit for $36,981.05.
At the time of the levy, the First National Bank was liable as guarantor upon letters of credit which had been issued by a New York bank in favor of the trading company. Eventually the First National Bank had to pay upon its guarantee more than the amount of the attached account; it seeks to offset against the attached account the debt of the trading company to it.
The present suit was heard by the late Vice-Chancellor Bentley. He decided that the Loebs formed the trading company for the purpose of defrauding complainant and that, as between those parties, the attached bank account was in equity the property of the Loebs and subject to appropriation to pay their debts. He also decided that, as between complainant and the First National Bank, the former had priority and that the bank account should be rendered by the bank to complainant in payment of the debt of the Loebs. But before a decree was signed, the vice-chancellor permitted the bank to raise an additional point which remained undecided at the time of his death. Counsel for the bank argue that because complainant is a non-resident alien and the bank is a domestic corporation, the latter should be preferred and should appropriate to the payment of its own debt the money on deposit with it even though, were complainant a citizen of New Jersey, he would be entitled to the money on deposit with the bank. In support of this contention they cite Disconto Gesellschaft v.Umbreit, 127 Wis. 651; 106 N.W. Rep. 821; 15 L.R.A. (N.S.)1045; affirmed, 208 U.S. 570; 28 S.C.R. 337.
In that case, Terlinden, a German subject, who was indebted to the Disconto Gesellschaft, a German bank, was declared a bankrupt in a proceeding instituted in Germany, and *Page 208 
fled to Wisconsin. While there, he became indebted to a citizen of Wisconsin, Umbreit. The German bank attached assets of Terlinden discovered in Wisconsin and Umbreit intervened in that proceeding. It appeared that the bank had made an agreement with the trustee in bankruptcy to transfer to the trustee whatever it might recover in the attachment suit, to be administered in Germany as part of the bankrupt estate.
The Wisconsin supreme court held that the resident of Wisconsin should be preferred; that the alien was not entitled to maintain its action as a matter of right but only on the ground of comity, and that it was the duty of the state to protect its citizen by preventing the removal of the assets of his debtor found within the state in order that he might be able to satisfy his claim in the state of his domicile. The United States supreme court held that the question was not one of absolute right but was one of comity to be determined by the public policy of Wisconsin.
The public policy of the State of New Jersey determines whether or not the lien of complainant should be subordinated to the claim of the First National Bank of Jersey City.
This court, in cases of insolvency of a foreign debtor, sometimes appoints an ancillary receiver to administer the assets within the state if there be resident creditors. But the purpose is not to prefer the resident creditors or to obtain for them a greater dividend upon their claims than non-resident creditors receive. The object of the court in such cases is to secure to the domestic creditors equality. Irwin v. Granite StateProvident Association, 56 N.J. Eq. 244; 38 Atl. Rep. 680; Moore
v. Bonnell, 31 N.J. Law 90.
The statutes and published decisions of the courts of this state may be searched in vain for indications of a policy to deprive a non-resident alien of a lien which he has secured on property in this state or to subordinate his lien to the claim of a resident of this state. In particular, the Attachment act of 1901 (1 Comp. Stat. p. 132), discloses no such policy. The benefits of that act are expressly extended to "any plaintiff whether resident in this state or not." As was said of the Death act of 1848: *Page 209 
"The legislature has power to include non-resident aliens and they are within the natural and ordinary import of the language employed. Neither the context nor the corrective purpose of the statute suggests any reason for a restrictive interpretation."Cetofonte v. Camden Coke Co., 78 N.J. Law 662;75 Atl. Rep. 913.
The complainant Body extended credit to American citizens. They attempted to defraud him. He established the legality of his claim by the judgment of a court of this state. Despite the fact that his domicile is on the other side of the world, he pursued his remedy here with the utmost vigor and secured a lien on his debtors' property. To deprive him of his lien merely because he is a non-resident alien would be shocking to fair play. It would also be poor business, for no American could hope to obtain credit abroad if it were the policy of the courts of this country to postpone the claims of foreign creditors until the debts of our own citizens had been satisfied.
I will advise a decree for complainant.